IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-134-F

STEPHEN THOMAS YELVERTON, *as* )
*Assignee of the claims of Wade H.* )
*Atkinson, Jr.*, )
                             )
      Plaintiff, )         **ORDER AND**
                             )   **MEMORANDUM AND**
        v. )   **RECOMMENDATION**
                             )
PHYLLIS Y. EDMUNDSON AND )
YELVERTON FARMS, LTD., )
                             )
      Defendants. )

This matter is before the court on the following motions: Defendant Phyllis Y.
Edmundson's ("Defendant Edmundson") and Defendant Yelverton Farms, Ltd.'s (collectively,
"Defendants") motion to dismiss the amended complaint of *pro se* Plaintiff Stephen Thomas
Yelverton ("Plaintiff") for lack of subject matter jurisdiction and for failure to state a claim upon
which relief may be granted pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil
Procedure [DE-18]; Plaintiff's Motion to Extend Page Length [DE-22]; and Plaintiff's Corrected
Motion to Strike Reply to Response to Motion [DE-27]. All response briefing is complete or the
time for filing such briefing has elapsed, and the pending motions are ripe for adjudication.
These motions were referred to the undersigned for an order or for a recommendation to the
District Court as necessary. June 30, 2016 Order [DE-33]; *see also* 28 U.S.C. §§ 636(b)(1)(A),
(B); Local Civil Rule 72.3(c). For the reasons set forth below, Plaintiff's motion to extend page
length [DE-22] is denied as moot, Plaintiff's motion to strike [DE-27] is denied, and it is
recommended that Defendants' motion to dismiss [DE-18] be granted.

## I. BACKGROUND

Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis* on March 31, 2015. [DE-1]. Plaintiff's motion was granted [DE-3] and the initial Complaint was filed on May 6, 2015 [DE-4]. Defendants filed a Motion to Dismiss on June 4, 2015 [DE-12], and on June 22, 2015, Plaintiff filed an Amended Complaint as of right [DE-17]. Defendants then filed the instant Motion to Dismiss the Amended Complaint on July 6, 2015 [DE-18], to which Plaintiff responded on July 27, 2015 [DE-21] and also filed a Motion to Extend Page Length as to his response in opposition [DE-22]. Defendants filed a Reply on August 10, 2015. [DE-24]. Plaintiff then filed a Motion to Strike Defendants' Reply [DE-26], followed by a Corrected Motion to Strike [DE-27]. Defendants responded in opposition to Plaintiff's Motion to Strike [DE-32] and Plaintiff filed a Reply [DE-33].

On July 30, 2015, Plaintiff filed a Motion to Amend Complaint [DE-23], to which Defendants responded in opposition on August 20, 2015 [DE-28], and Plaintiff then filed a Reply [DE-31]. The court denied Plaintiff's Motion to Amend on October 27, 2015. [DE-35]. On October 29, 2015, Plaintiff filed a Notice of Interlocutory Appeal [DE-36] and a Motion for Reconsideration of the court's order denying the motion to amend [DE-37]. Plaintiff then filed a Supplemental Motion for Reconsideration on November 30, 2015 [DE-40], to which Defendants responded in opposition [DE-41], and Plaintiff filed a Reply [DE-44]. On December 22, 2015, the court stayed the case pending resolution of Plaintiff's interlocutory appeal. [DE-43]. On March 31, 2016, the Fourth Circuit dismissed Plaintiff's appeal in an unpublished, per curiam opinion. [DE-45]. On June 24, 2016, the court consolidated Plaintiff's two pending cases (numbers 5:15-CV-134-F and 5:16-CV-31-F) into the lead case, number 5:15-CV-134-F. [DE-

2

50]. On June 30, 2016, the court denied Plaintiff's Supplemental Motion for Reconsideration [DE-51] and referred the pending motions discussed above to the undersigned [DE-52].

Plaintiff has filed two prior actions in this court against these same Defendants related to the ownership of Yelverton Farms and both actions were dismissed. *See Webster v. Yelverton Farms Ltd.*, No. 5:09-CV-331-FL (E.D.N.C. March 7, 2011) (unpublished) (holding plaintiff lacked standing to assert claims for judicial dissolution and liquidation of Yelverton Farms, payment of dividends, and other relief because the claims became property of plaintiff Yelverton's bankruptcy estate upon conversion of the bankruptcy case from Chapter 11 to Chapter 7); *Yelverton v. Yelverton Farms, Ltd.*, No. 5:14-CV-365-FL (E.D.N.C. Feb. 26, 2015) (dismissing all claims, including demand for judicial receivership of Yelverton Farms, for failure to state a claim upon which relief can be granted).

## II. FACTUAL ALLEGATIONS

Plaintiff, a resident of Arlington County, Virginia, has brought this action in diversity against Defendant Edmundson, a resident of North Carolina, and Defendant Yelverton Farms, Ltd., a closely-held North Carolina corporation, seeking monetary damages in an amount over $75,000.00. Am. Compl. [DE-17] at 1 ¶ 1. Plaintiff alleges that in November 2007, he obtained a $360,000.00 loan from Wade H. Atkinson, Jr. ("Atkinson"), a business associate, and pledged as collateral Plaintiff's 1,333.3 shares of stock ("the stock") in Yelverton Farms, Ltd. *Id.* at 3 ¶ 11. On May 30, 2008, Plaintiff assigned the stock to Atkinson for repayment of the $360,000.00 loan. *Id.* at 2 ¶ 4, 3 ¶ 12. On April 4, 2008, White & Allen, counsel for Defendants in the instant case, represented Atkinson in placing a lien on the stock, while simultaneously representing Defendant Edmundson with respect to the same stock. *Id.* at 3-4 ¶¶ 12-13. Defendant

3

Edmundson, the President and controlling stockholder of Yelverton Farms, Ltd., told Plaintiff in August 2008 that she would not allow him to assign his stock to Atkinson as the company was a family business, and additionally, she would not allow Plaintiff to cash out his $700,000.00 equity in the company. *Id.* at 4 ¶ 14. Based upon Defendant Edmundson's representations, Plaintiff sent Atkinson a written rescission of the assignment of the stock on May 13, 2009. *Id.* ¶ 15.

On May 14, 2009, Plaintiff filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Columbia, and scheduled the stock as property of the estate to be used to first repay Atkinson as a secured creditor. *Id.* ¶ 16. Atkinson protested the rescission of the stock assignment, and was advised by White & Allen to contact local counsel for Yelverton Farms, Ltd., John Walston ("Walston"). *Id.* ¶ 17. Walston advised Atkinson, through a letter dated May 27, 2009, that Atkinson could not become a stockholder in Yelverton Farms, Ltd. unless Plaintiff consented, and both Atkinson and Plaintiff believed Plaintiff was still the owner of the stock and could not consent to a reassignment due to the ongoing bankruptcy. *Id.* at 4-5 ¶¶ 18-21. In August of 2009, Atkinson timely filed a proof of claim in Plaintiff's bankruptcy case for repayment of the $360,000.00 loan. *Id.* at 5 ¶ 24.

On July 29, 2009, Plaintiff filed a case against Defendants (No. 5:09-CV-331-FL, "*Yelverton I*") for dissolution of the corporation or a mandatory buy-out of his stock pursuant to N.C. Gen. Stat. §§ 55-14-30(2)(ii) and 55-14-31(d), seeking to obtain funds to repay his creditors in the bankruptcy case. Am. Compl. [DE-17] at 5 ¶ 25. Defendant Edmundson stated that Plaintiff owned the stock in her Answer, filed on August 25, 2009, and Plaintiff and Atkinson relied on this representation. *Id.* at 6 ¶¶ 27-28. Atkinson, at the prompting of White & Allen,

4

moved to intervene in *Yelverton I*. *Id.* ¶¶ 29-30. On August 20, 2009, Defendant Edmundson executed an affidavit affirming that she owed fiduciary duties to Plaintiff as a result of his stock in Yelverton Farms, Ltd. *Id.* ¶ 31. On January 14, 2010, Plaintiff as trustee of the bankruptcy estate, commenced Adversary Proceeding No. 10-10003 against Defendants seeking turnover of the stock to Plaintiff for the benefit of his creditors. *Id.* at 7 ¶ 34. On February 24, 2010, the bankruptcy court disallowed Atkinson's lien on the stock as not properly perfected in the District of Columbia. *Id.* ¶ 36. On February 25, 2010, Atkinson was dismissed from *Yelverton I*, and the parties were ordered to attend a settlement conference. *Id.* ¶¶ 38-39. Plaintiff was directed to obtain a stay of the turnover action in the adversary proceeding until the settlement conference had taken place. *Id.* at 8 ¶ 40.

Defendants filed an Amended Answer in *Yelverton I* on March 17, 2010 [DE-17-1], wherein Defendant Edmundson admitted that Atkinson was the owner of the stock and had been since May 30, 2008, because the rescission on May 13, 2009 was not valid pursuant to North Carolina law. Am. Compl. [DE-17] at 2, ¶ 4, 8 ¶¶ 41-42. After an unsuccessful settlement conference, Defendant Edmundson filed a motion to stay the Adversary Proceeding to allow for resolution of the stock ownership in *Yelverton I*, which the Bankruptcy Court granted. *Id.* at 8-9, ¶¶ 43-49. Plaintiff contends that no court has determined the ownership of the stock, and Defendant Edmundson has retained possession of the stock certificates such that Plaintiff has not been able to examine them. *Id.* at 10 ¶¶ 51, 54-55. By accepting the May 30, 2008 assignment of stock, Defendants received the benefit of removing the stock from the bankruptcy estate and not being required to turn over the stock to the trustee. *Id.* ¶ 53.

5

On March 12, 2015, Atkinson assigned to Plaintiff all rights and interests in the stock, including litigation claims, and this assignment is effective as of that date where Atkinson and Plaintiff rescinded their Settlement Agreement, dated August 17, 2010. *Id.* at 2 ¶ 2, 10-11 ¶¶ 56-57; Rescission [DE-17-2]; Assignment [DE-17-3]. Plaintiff contends that he did not own the stock on May 14, 2009, when he filed for Bankruptcy, and accordingly, the stock is excluded from the bankruptcy estate. Am. Compl. [DE-17] at 2 ¶ 5. Further, Plaintiff contends that Defendant Edmundson has the responsibility to abide by her fiduciary duties to Plaintiff, but she has made clear that she will not act to protect his interests as a stockholder. *Id.* at 11 ¶¶ 58-60.

Plaintiff asserts the following causes of action against Defendants: a claim for judicial receivership, liquidation, and dissolution of Yelverton Farms, Ltd. pursuant to N.C. Gen. Stat. §§ 55-14-30(2)(ii), 55-14-31(a)-(d), and 55-14-32(a)-(e), based on Plaintiff's standing as a stockholder effective March 12, 2015, along with a demand for $360,000.00 for the fair market value of his stock because his rights and interests as a minority stockholder will not be protected by Defendant Edmundson; and a claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTP"), N.C. Gen. Stat. § 75-1.1, based on Defendant Edmundson's denial of Plaintiff's rights as a stockholder and investor in Yelverton Farms, Ltd., which is a breach of her fiduciary duties in violation of the statute. Am. Compl. [DE-17] at 11-13 ¶¶61-62, 66. Additionally, Plaintiff requests that the affirmative defenses of quasi-estoppel and equitable estoppel be invoked against Defendant Edmundson to prevent her from denying that based upon her actions, Atkinson became the owner of the stock on May 30, 2008, such that the stock was not part of Plaintiff's bankruptcy estate. *Id.* at 12 ¶¶ 63-65.

6

## III. STANDARD OF REVIEW

### A.    Fed. R. Civ. P. 12(b)(1)—Lack of Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1), a court must dismiss all or part of an action over which it lacks subject matter jurisdiction. Whether subject matter jurisdiction exists is a threshold question that must be addressed by the court before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff, as the part opposing a Rule 12(b)(1) motion to dismiss, has the burden of proving that subject matter jurisdiction does, in fact, exist. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citations omitted). Further, in order to demonstrate the existence of subject matter jurisdiction, the plaintiff must show standing to assert his claims. *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230-31 (4th Cir. 2008) (citations omitted).

### B.    Fed. R. Civ. P. 12(b)(6)—Failure to State a Claim upon which Relief can be Granted

Pursuant to Rule 12(b)(6), a court may dismiss an action which fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss tests the sufficiency of the facts pleaded in the complaint and the relevant inquiry is whether the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a motion to dismiss, a court is required to consider the complaint in the light most favorable to the plaintiff and to accept as

7

true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts setting forth a cognizable claim under federal law. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390-91 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (holding that the court is not required to "conjure up questions never squarely presented.").

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, this rule is subject to several exceptions. "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citations omitted). The court "may also consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached

8

to the motion to dismiss, so long as they are integral to the complaint and authentic." *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted) (also noting that the court "may properly take notice of matters of public record."); *see also Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (considering a statement attached to a motion to dismiss where "it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity.") (citations omitted). Exhibits that may be incorporated within the pleadings under Rule 10(c) include documents such as affidavits, letters, contracts, and loan documentation. *Eagle Nation v. Market Force, Inc.*, 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001) (citation omitted). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c) . . . the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (citation omitted).

## IV. DISCUSSION

### A. Plaintiff's Motion to Extend Page Length [DE-22]

Plaintiff requests court approval, pursuant to Local Civil Rule 7.2(e), to extend the 30-page limit as to his memorandum in opposition to Defendants' motion to dismiss. Pl.'s Mot. [DE-22]. Plaintiff notes that his memorandum is 30 pages long, but contains single-spaced quotations from the Amended Complaint. *Id.* Accordingly, in the event the court considers the memorandum to exceed 30 pages (with double spacing), Plaintiff requests leave to extend the page limit. *Id.* The time for responsive briefing elapsed without Defendants filing a response in opposition to Plaintiff's motion.

Pursuant to the Local Civil Rules, supporting or opposing memoranda shall not exceed 30 pages exclusive of the certificate of service without prior court approval. Local Civil Rule

7.2(e). While it is not the best practice to include close to five pages of single-spaced allegations copied directly from the pleadings, Plaintiff's memorandum in opposition is still within the page limit provided by the Local Rules. Accordingly, Plaintiff's Motion to Extend Page Length [DE-22] is denied as moot.

## B. Plaintiff's Corrected Motion to Strike Reply to Response to Motion [DE-27]

Plaintiff requests that the court strike the first two pages of Defendants' Reply [DE-24] with respect to stock ownership pursuant to Rule 12(f)(2). Pl.'s Mot. [DE-27]. In support of his position, Plaintiff argues that Defendants improperly raised the issue of res judicata for the first time in the reply, which would in any event be an insufficient defense, and also contends that Defendants improperly submitted Exhibit 7 for the first time in connection with the reply, when it could have been submitted along with the motion to dismiss. *Id.* In response, Defendants argue that the matters relied upon in their reply were previously raised and Plaintiff's motion to strike should be denied. Defs.' Resp. [DE-32]. In reply, Plaintiff contends that Defendants' response in opposition does not address the matters raised in the motion to strike and engages in improper personal attacks on Plaintiff instead of engaging in substantive arguments on the merits. Pl.'s Reply [DE-33].

Pursuant to the Local Rules, replies to responses are intended to allow a party to respond to matters raised in response to a motion, not to allow parties to raise new arguments. Local Civil Rule 7.1(f)(1) ("Replies to responses are discouraged. However . . . a party desiring to reply to matters initially raised in a response to a motion shall file the reply within 14 days after service of the response[.]"). Additionally, Rule 12(f) allows the court to strike "insufficient defense[s] or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P.

10

12(f). However, "[m]otions to strike a defense as legally insufficient are generally disfavored by courts and are usually denied unless there is a showing of prejudice to the moving party." *Morrisroe v. Goldsboro Mill. Co.*, 884 F. Supp. 192, 194 (E.D.N.C. 1994) (citation omitted). "However, a motion to strike a defense is appropriately granted when the defense is clearly legally insufficient as, for example, when there is clearly no bona fide issue of fact or law." *Id.* (internal quotation marks and citations omitted).

Plaintiff primarily contends that Defendants failed to raise the issue of res judicata as to stock ownership prior to the reply, and improperly submitted an exhibit for the first time in connection with the reply. A review of the filings, however, demonstrates that Defendants contested the issue of Plaintiff's standing due to lack of stock ownership explicitly in the memorandum in support of their motion to dismiss.[1] *See* Defs.' Mem. [DE-19] at 4-8. Additionally, Exhibit 7 [DE-24-4] is an order from the United States Court of Appeals for the D.C. Circuit, which the court may properly consider regardless of whether it was submitted by the parties, as it is a matter of public record. Plaintiff also contends that Defendants' arguments as to standing and stock ownership constitute an insufficient defense. However, such motions are generally disfavored and are usually denied absent a showing of prejudice by the party seeking to strike the defense. *See Morrisroe*, 884 F. Supp. at 194. "[A] motion to strike a defense is appropriately granted when the defense is clearly legally insufficient as, for example, when there is clearly no bona fide issue of fact or law." *Id.* (internal quotation marks and citations omitted). Defendants' argument that Plaintiff lacks standing to pursue this lawsuit presents a bona fide issue, as whether Plaintiff possesses standing is a threshold issue that the

---

[1] Despite Plaintiff's contentions, Defendants do not explicitly raise a res judicata argument. *See* Defs.' Mem. [DE-19]; Defs.' Reply [DE-24].

11

court must resolve before turning to the merits of his case, and moreover, Plaintiff has failed to demonstrate any prejudice as a result of this defense. Accordingly, Plaintiff's motion to strike [DE-27] is denied.

### C. Defendants' Motion to Dismiss [DE-18]

Defendants move to dismiss Plaintiff's Amended Complaint for lack of standing as Plaintiff has no interest in the stock in Yelverton Farms, Ltd. where the stock was adjudicated as part of the bankruptcy estate; based upon *Burford* abstention; and for failure to state a claim upon which relief may be granted. Defs.' Mem. [DE-19]; Defs.' Reply [DE-24]. In response, Plaintiff asks that the court *sua sponte* note the conflicts of interest of White & Allen as its representation of Defendant Edmundson and Atkinson. Pl.'s Resp. [DE-21]. This conclusory statement is insufficient to raise an issue for the court's consideration, however, and the undersigned will not consider this argument. Additionally, Plaintiff argues that Defendant Edmundson has failed to dispute that she asserted in the Amended Answer in *Yelverton I* that Atkinson had been the owner of the stock since May 30, 2008, and has thus waived any challenge to this admission, and certain estoppel doctrines would apply to prevent her from arguing otherwise. *Id.* at 1-12. Plaintiff also argues that judicial estoppel should not be invoked against Plaintiff and Atkinson; the mutual rescission of the settlement agreement between Plaintiff and Atkinson is valid pursuant to the law in the District of Columbia; the Amended Complaint sufficiently pleads a cause of action for judicial receivership, liquidation, and dissolution; *Burford* abstention does not apply to dissolution of family-held non-public corporations; Plaintiff is not collaterally attacking the settlement agreement in the bankruptcy case; and the UDTP claim results from Defendant Edmundson acting to prevent a sale of

12

corporate assets. *Id.* at 12-14, 21-29. Plaintiff also objects to numerous exhibits filed by Defendants in connection with the motion to dismiss, arguing the exhibits would be precluded as hearsay and are immaterial. *Id.* at 14-20. Finally, Plaintiff requests an evidentiary hearing. *Id.*

In the context of a Rule 12 motion to dismiss, the court may consider matters of public record, such as court filings, and other documents where the plaintiff does not challenge their authenticity. *See Phillips*, 572 F.3d at 180; *LCI Intern., Inc.*, 190 F.3d at 618. "Courts routinely take judicial notice of documents filed in other courts, not for the truth of the matters asserted but rather to establish the fact of such litigation and related filings." *Yelverton v. Yelverton Farms, Ltd.*, No. 5:14-CV-365-FL, 2015 WL 847393, at *15 n.8 (E.D.N.C. Feb. 26, 2015) (unpublished) (quoting *Veteran Constructors, Inc. v. Beeler Barney & Assocs. Masonry Contractors, Inc.*, No. 2:13-CV-64-F, 2014 WL 4199238, at *3 (E.D.N.C. Aug. 22, 2014) (unpublished) (further citations omitted)). Plaintiff objects to numerous exhibits filed by Defendants in connection with the motion to dismiss, arguing the exhibits would be precluded as hearsay and are immaterial. Pl.'s Resp. [DE-21] at 14-20. The documents cited to are primarily filings in other cases, and as such are matters of public record that the court may properly consider. Thus, Plaintiff's objections are without merit.

### 1. Standing

Defendants assert that Plaintiff's claims for judicial dissolution, liquidation, and receivership and for unfair and deceptive trade practices should be dismissed pursuant to Rule 12(b)(1) for lack of standing where Plaintiff has failed to show that he owns stock in Yelverton Farms, Ltd. Defs.' Mem. [DE-19] at 4-8, 10. In response, Plaintiff contends that Edmundson admitted to Atkinson being the owner of the stock since May 30, 2008, resulting in the stock not

13

becoming a part of the bankruptcy estate, and Plaintiff and Atkinson validly rescinded their previous settlement agreement. Pl.'s Resp. [DE-21] at 1-3, 21. Indeed, Plaintiff must have some stake in Yelverton Farms, Ltd. in order to pursue his claims, as he contends that Defendants violated the Unfair and Deceptive Trade Practices Act when Defendant Edmundson breached her fiduciary duties owed to Plaintiff as a shareholder and investor, and Plaintiff's claims for judicial dissolution, liquidation, and receivership are based on his status as a stockholder in Yelverton Farms, Ltd. Am. Compl. [DE-17] at 11-13; *see also* N.C. Gen. Stat. § 55-14-30(2)(ii) (listing as a ground for corporate dissolution where it is "reasonably necessary for the protection of the rights or interests of the complaining shareholder"); *id.* § 55-14-31 (detailing the procedure for judicial dissolution); *id.* § 55-14-32 (detailing the procedure for receivership when there is a judicial proceeding for corporate dissolution). Thus, if Plaintiff does not own stock in Yelverton Farms, Ltd., he lacks standing to pursue these claims and they should be dismissed.

Plaintiff presents a convoluted history of the ownership of the stock at issue. According to the Amended Complaint, Plaintiff assigned the stock to Atkinson on May 30, 2008, and then rescinded that assignment on May 13, 2009, but that rescission may have been invalid. On May 14, 2009, Plaintiff filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Columbia, scheduling the stock as property of the estate. However, Plaintiff contends that Defendant Edmundson admitted in the Amended Answer in *Yelverton I* that Atkinson had been the owner of the stock since May 30, 2008, and as such the stock was not part of the bankruptcy estate. Am. Answer [DE-17-1]. Additionally, Atkinson assigned the stock to Plaintiff on March 12, 2015, and Plaintiff has been the owner of the stock since that date, where

14

Plaintiff and Atkinson rescinded their August 17, 2010 Settlement Agreement. Rescission [DE-17-2]; Assignment [DE-17-3].

Plaintiff's narrative, however, leaves out several critical details. Plaintiff originally filed for Chapter 11 Bankruptcy, but on August 20, 2010, his case was converted to Chapter 7 and a Bankruptcy Trustee was appointed. *In re Yelverton*, No. 09-00414 (Bankr. D.C.), Aug. 20, 2010 Order [DE-323]. As a result of the conversion of Plaintiff's bankruptcy case, this court in *Yelverton I* determined that Plaintiff lacked standing to pursue his claims and ordered that the case be dismissed unless the Bankruptcy Trustee filed a notice of substitution. *Webster v. Yelverton Farms, Ltd.*, No. 5:09-CV-00331-FL (E.D.N.C.) Mar. 7, 2011 Order [DE-120]. Ultimately, the Bankruptcy Trustee did file a Notice of Substitution and prosecuted the case on behalf of the estate. *Id.* [DE-122].

On December 7, 2009, prior to the conversion of his case to Chapter 7, Plaintiff instituted an adversary proceeding against Atkinson, asserting claims of misrepresentation and tortious interference and seeking $400,000.00 in compensatory damages and $200,000.00 in punitive damages. *Yelverton v. Atkinson*, No. 09-10051 (Bankr. D.C.) Compl. [DE-1]. Plaintiff and Atkinson entered into a settlement agreement on August 17, 2010, whereby Plaintiff agreed to dismiss his claims against Atkinson in exchange for Atkinson renouncing any interest in any stock or interest in Yelverton Farms, Ltd., effective as of May 30, 2008, and the bankruptcy court entered a judgment approving the settlement on January 25, 2011. *Id.*, Jan. 11, 2011 Order [DE-50].

Thereafter, the Bankruptcy Trustee reached a settlement agreement with Defendants (who were named in an adversary proceeding along with other individuals) on March 23, 2012,

15

whereby the parties agreed that the trustee would dismiss all claims against the defendants and transfer the stock from the bankruptcy estate to the defendants in exchange for a payment of $110,000.00, and this settlement agreement was approved by the Bankruptcy Court on June 19, 2012. *Id.* June 19, 2012 Order [DE-477]. Based on the settlement agreement, *Yelverton I* was dismissed in this court. *Webster v. Yelverton Farms, Ltd.*, No. 5:09-CV-00331-FL (E.D.N.C.) July 17, 2012 Order [DE-142]. Plaintiff sought to have the settlement agreement in the bankruptcy court set aside through the filing of various motions, but was unsuccessful. On appeal, the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit both affirmed the settlement agreement. *In re Yelverton*, No. 1:12-CV-01539-CRC (D.D.C. Aug. 6, 2014) [DE-8, -9]; *In re Yelverton*, No. 14-7149 (D.C. Cir. Mar. 9, 2015) (per curiam).

Upon the filing of a bankruptcy case, a bankruptcy estate is created which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property of the estate includes both causes of action and "'[a]ny interest in property that the estate acquires after the commencement' of a bankruptcy case." *In re Brogdan*, 414 F.3d 507, 512 (4th Cir. 2005) (quoting *Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899, 901 (7th Cir. 2000) & 11 U.S.C. § 541(a)(7)). Once property enters the bankruptcy estate, "[i]t remains property of the estate until it has been exempted by the debtor under § 522, abandoned by the trustee under § 544(a), or sold by the trustee under § 363." *In re Pullman*, 319 B.R. 443, 445 (Bankr. E.D. Va. 2004). Furthermore, "[i]t is well settled that . . . a judgment cannot be attacked collaterally." *City of Wheeling v. John F. Casey Co.*, 89 F.2d 308, 310 (4th Cir. 1937) (citing *City of Wheeling v. John F. Casey Co.*, 85 F.2d 922 (4th Cir. 1936)). Court-approved

16

settlements are equivalent to final judgments. *Holywell Corp. v. United States*, 229 F.3d 1142, 2000 WL 1233582, at \*1 (4th Cir. 2000) (unpublished) (per curiam) ("Because the settlement was approved by court order in a case now final, the earlier settlement order represents a final judgment on the merits in a prior suit.").

Here, Plaintiff's argument as to stock ownership necessitates a determination that Atkinson had owned the stock since May 30, 2008, such that the stock did not become part of Plaintiff's bankruptcy estate when Plaintiff filed for bankruptcy on May 14, 2009. However, this directly conflicts with two court-approved settlements in the bankruptcy cases, wherein Atkinson renounced any interest in stock in Yelverton Farms as of May 30, 2008, and the Bankruptcy Trustee transferred the stock from the estate to Defendants in exchange for a payment of $110,000.00 to the estate. Thus, the stock was treated as part of the bankruptcy estate and any challenge to that disposition must be directed to that court, not here, as this court cannot collaterally attack the bankruptcy court's judgment. This is demonstrated by documents of public record, which prevail over Plaintiff's allegations in the complaint in the event of a conflict. *Fayetteville Inv'rs*, 936 F.2d at 1465 (4th Cir. 1991). Further, to the extent that Plaintiff claims Defendant Edmundson admitted that Atkinson owned the stock since May 30, 2008 in the Amended Answer in *Yelverton I*, causing the stock to not become part of the bankruptcy estate, this argument is without merit where documents of public record demonstrate that the stock was treated as part of the bankruptcy estate. A party cannot defeat such a result by merely pointing to allegations in pleadings in another case. Indeed, any challenge to the determination of property of the bankruptcy estate must be directed to the Bankruptcy Court, and not here. Accordingly, the allegations in the Amended Complaint fail to show that Plaintiff

17

owns any stock in Yelverton Farms, Ltd., and as such, he has failed to demonstrate that he has standing to pursue his claims in the instant case. It is thus recommended that Defendants' motion to dismiss for lack of standing pursuant to Rule 12(b)(1) be granted. As this motion is resolved on the parties' filings, Plaintiff's request for an evidentiary hearing is denied.

## 2. *Burford* Abstention

Defendants also argue that the court should dismiss Plaintiff's claim for judicial dissolution, receivership, and liquidation pursuant to Rule 12(b)(1) by invoking the *Burford* abstention doctrine. Defs.' Mem. [DE-19] at 2-3; *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Defendants argue that federal courts consistently abstain from resolving state corporate dissolution claims where the state has a uniform regulatory scheme for dissolving corporations created and regulated by the state. *Id.* In support of this argument, Defendants point to North Carolina's statutory scheme for voluntary, administrative, and involuntary corporate dissolution, all of which are discretionary remedies, and to the establishment of the North Carolina Business Court, which together demonstrate that North Carolina has established a unified system of review for corporate dissolution cases. *Id.* In response, Plaintiff argues that the *Burford* abstention does apply to dissolution of family-held non-public corporations and cites to cases within the Fourth Circuit where federal courts have resolved corporate dissolution claims of closely-held non-public corporations. Pl.'s Resp. [DE-21] at 24-28. Additionally, Plaintiff argues that the court may not invoke *Burford* abstention where Plaintiff is seeking monetary relief. *Id.*

In summarizing the standard for when *Burford* abstention is appropriately applied, the Fourth Circuit has stressed that "the federal judiciary has always maintained some modicum of

18

respect for state public policies in areas of paramount state concern." *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 719 (4th Cir. 1999).

> Federal courts should thus "exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford*, 319 U.S. at 318 (internal quotation marks omitted). And the federal judiciary should accordingly abstain from deciding cases (1) that present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar" or (2) whose adjudication in a federal forum "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (NOPSI) (internal quotation marks omitted).

*Id.* Courts are cautioned that abstention is the exception, and not the rule. *First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 335, 348 (4th Cir. 2002) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)) (affirming a dismissal of a complaint pursuant to *Burford* to avoid interfering with a state receivership proceeding, noting that receivership was a highly regulated state process and a matter of substantial public concern). Further, abstention is not available where a plaintiff is seeking non-equitable or non-discretionary relief. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996) ("We have explained the power to dismiss or remand a case under the abstention doctrines in terms of the discretion federal courts have traditionally exercised in deciding whether to provide equitable or discretionary relief . . . .").

"Abstention on *Burford* grounds in cases seeking equitable relief affecting corporations is a well recognized application of the doctrine." *Ives v. Advanced Broadband Sols., Inc.*, No. Civ. A. DKC-2003-0848, 2004 WL 180043, at *4 (D. Md. Jan. 23, 2004) (citations omitted) (unpublished) (dismissing the plaintiff's claims for seeking a corporate accounting and dissolution based on *Burford* and rejecting the plaintiff's argument that federal courts should not

19

abstain from deciding the equitable state corporate claims). The *Ives* court noted the existence of a comprehensive state statutory scheme governing corporate matters, including dissolution, stating that "the right to control such matters, especially the dissolution of a corporation without its consent, belongs to the state which created the corporation and the courts generally will not interfere with the management of the internal affairs of a foreign corporation." *Id.* at *5 (citation and footnote omitted). Further, "[a]s its comprehensive legislative scheme demonstrates, Virginia has a strong interest in retaining the power to govern the internal affairs of its corporations . . . .[and] such state interest is not outweighed by any federal interest in retaining jurisdiction over this dispute." *Id.* (citation omitted).

Plaintiff argues that federal courts within the Fourth Circuit routinely resolve corporate dissolution claims of closely-held non-public corporations. Pl.'s Mem. [DE-21] at 26 (collecting cases). However, these cases are not dispositive as they lack any discussion of abstention. Plaintiff's reliance on these cases for the proposition that the court should not apply abstention in this case is therefore not persuasive. North Carolina has a comprehensive statutory scheme governing corporate matters, including procedures for corporate dissolution that are voluntary, administrative, and involuntary. *See* N.C. Gen. Stat. § 55-14-30 *et seq.* The statutes provide that venue in involuntary dissolution actions is proper in the county where the corporation's principal office is located. *Id.* § 55-14-31(a). Additionally, disputes involving North Carolina corporations under Chapter 55 may be designated as a mandatory complex business case for resolution by the North Carolina Business Court, a special division of the North Carolina General Court of Justice. *Id.* § 7A-45.4. Here, North Carolina has a strong interest in regulating the corporations it has created, and there is no countervailing federal interest in retaining

20

jurisdiction over this suit. Moreover, Plaintiff's argument that *Burford* cannot apply in this case where he is seeking monetary damages is without merit, where Plaintiff's monetary claims are based on a forced buyout of the stock he claims to own in Yelverton Farms, Ltd. While abstention is not appropriate in cases seeking purely monetary relief, Plaintiff here is seeking judicial dissolution, receivership, and liquidation, or a forced buyout of his stock, which are inherently equitable and discretionary remedies. Moreover, the procedures for corporate dissolution under the North Carolina statutes are solely discretionary remedies. *See* N.C. Gen. Stat. § 55-14-30 ("The Superior court *may* dissolve a corporation . . . .") (emphasis added). Accordingly, if it is determined that Plaintiff does have standing to pursue his claims, it is recommended in the alternative that the court apply the *Burford* abstention doctrine to dismiss without prejudice Plaintiff's claim for judicial receivership, liquidation, and dissolution of Yelverton Farms, Ltd. pursuant to N.C. Gen. Stat. §§ 55-14-30(2)(ii), 55-14-31(a)-(d), and 55-14-32(a)-(e).[2]

### 3. Quasi-Estoppel, Equitable Estoppel, and Judicial Estoppel

In the Amended Complaint, Plaintiff asserts the affirmative defenses of quasi-estoppel and equitable estoppel, and requests that they be invoked in order to prevent Defendant Edmundson from denying that her actions resulted in Atkinson becoming the owner of the stock on May 30, 2008 such that the stock did not become part of the bankruptcy estate. Am. Compl. [DE-17] at 12 ¶¶ 63-65. In response to Defendants' motion to dismiss, Plaintiff also contends that judicial estoppel should be invoked to prevent Defendant Edmundson from arguing that this

---

[2] Where Defendants' motion to dismiss is resolved based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the undersigned does not reach Defendants' arguments that Plaintiff has failed to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

21

court lacks jurisdiction to consider this case. Pl.'s Reply [DE-21] at 7-8. However, the court has an independent obligation to assess whether subject matter jurisdiction is present and must dismiss a case at any time if it determines that subject matter jurisdiction is lacking, and whether the plaintiff has standing to assert his claims is part of the subject matter jurisdiction analysis. Fed. R. Civ. P. 12(h)(3); *Long Term Care Partners, LLC*, 516 F.3d at 330-31. Additionally, as discussed above, the documents of public record in Plaintiff's other cases demonstrate that Plaintiff lacks standing to pursue his claims, such that subject matter jurisdiction is lacking here. Plaintiff's request for judicial estoppel is thus denied.

Plaintiff contends that Defendant Edmundson should be bound by her admission that Atkinson become the owner of the stock on May 30, 2008. Specifically, Plaintiff contends that Defendant Edmundson admitted in the Amended Answer in *Yelverton I* that Atkinson was the owner of the stock, and argues that as a result, the stock did not become part of the bankruptcy estate. As discussed above, Plaintiff cannot contest the property of the bankruptcy estate in this manner. Further, Plaintiff misstates Defendants' position in *Yelverton I*. In his Amended Complaint in that case, Plaintiff alleged that "[i]n May 2008, the Plaintiff agreed to assign and sell the 1,333 shares of stock to Mr. Atkinson in consideration of the re-payment of a loan from him." *Webster v. Yelverton Farms, Ltd.*, No 5:09-CV-00331-FL (E.D.N.C.) Am. Compl. [DE-76] at 1 ¶ 17. In the Amended Answer, Defendants denied Paragraph 17 of the Amended Complaint. *Id.* Answer and Mtn. to Dismiss [DE-79] at 3 ¶ 17. In support of the motion to dismiss in that case, Defendants contended that accepting Plaintiff's allegations as true, he alleged that he had assigned his stock in Yelverton Farms, Ltd. to Atkinson and based on these allegations, Defendants argued that Plaintiff lacked standing to pursue his claims. *Id.* Defs.'

22

Mem. [DE-80] at 3, 11-13. Thus, Defendants were making a legal argument based on the allegations raised by Plaintiff.

Plaintiff cites to *In re Covington's Will*, 252 N.C. 546, 114 S.E.2d 257 (1960) for the elements of equitable estoppel.[3] Pl.'s Mem. [DE-21] at 9-10. As it relates to the party to be estopped, equitable estoppel requires

> (1) [c]onduct which amounts to a false representation or concealment of material facts, or at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts.

*In re Covington's Will*, 252 N.C. at 549, 114 S.E.2d at 260. Equitable estoppel thus requires false representation or concealment of facts, and it is not properly applied to legal arguments. Plaintiff here requests that equitable estoppel be invoked against Defendant Edmunds based on her argument that as a matter of law, based on the face of Plaintiff's previous complaint, he did not possess standing to pursue his earlier lawsuit. This is not a proper application of equitable estoppel where Plaintiff asserts that Defendant Edmundson should be bound by an earlier legal argument and does not point to any misrepresentation or concealment of material facts.

As to quasi-estoppel, Plaintiff cites to *In re Jones*, 141 F. Supp. 2d 577, 579 (W.D.N.C. 2001), which provides that "[q]uasi-estoppel is based on a party's acceptance of the benefits of a transaction, and provides that where one having the right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or

---

[3] Both parties cite to North Carolina law in discussing the application of various estoppel doctrines, without any argument as to why North Carolina law would apply here. It is thus assumed without deciding that North Carolina law would apply on this issue.

23

effect by taking a position inconsistent with it." *Id.* at 579 (applying quasi-estoppel to prevent a bank from claiming a payoff was only intended to cover one deed when the parties' communications evinced that the payoff was intended to apply to two deeds) (internal quotation marks, citations, and alterations omitted). Again, Plaintiff seeks to invoke quasi-estoppel to prevent Defendant Edmundson from disputing that Atkinson was the owner of the stock based on her earlier acceptance of the assignment, as evidenced by the amended Answer in *Yelverton I*. Where quasi-estoppel requires some type of transaction or agreement between the parties, it is not properly applied against Defendant Edmundson based on her earlier legal argument. Thus, Plaintiff's affirmative defenses of quasi-estoppel and equitable estoppel do not apply to the facts of the instant case.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Extend Page Length [DE-22] is DENIED AS MOOT, Plaintiff's Motion to Strike [DE-27] is DENIED, and it is RECOMMENDED that Defendant's motion to dismiss [DE-18] be GRANTED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 19, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of

deadlines specified in local rules), 72.4(b). Any response to objections shall be filed by within **7 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, the 9th day of September 2016.

Robert B. Jones, Jr.
United States Magistrate Judge