IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| STEPHEN THOMAS YELVERTON, ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | No. 5:15-CV-00134-F | |
| ) | | |
| PHYLLIS Y. EDMUNDSON and ) | | |
| YELVERTON FARMS, LTD., ) | | |
| Defendants. ) | | |
| _____ ) | | |
| | | |
| STEPHEN THOMAS YELVERTON, ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | No. 5:16-CV-00031-F | |
| ) | | |
| YELVERTON FARMS, LTD. ) | | |
| Defendant. ) | | |
| _____ ) | | |

## ORDER

Before the court are the following motions: (1) the motion of Defendants Phyllis Edmundson and Yelverton Farms, Ltd. to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure [DE-18, No. 5:15-CV-134-F];[1] and (2) Plaintiff's motions for judicial notice [DE-50, -53, -56]. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. entered a memorandum and recommendation ("M&R"), recommending Defendants' motion be allowed pursuant to Rule 12(b)(1). [DE-63]. Plaintiff objected, Defendants responded, and

---

[1] On June 24, 2016, the court consolidated cases 5:15-CV-134-F and 5:16-CV-31-F, designating case number 5:15-CV-134-F as the lead case. This order addresses only the lead case.

Plaintiff replied. [DE-64, -65, -66].[2] For the reasons stated below, the court adopts the M&R as its own and allows Defendants' motion. The court denies Plaintiff's motions for judicial notice.

## I.  BACKGROUND

In the current action, Plaintiff seeks (1) judicial receivership, liquidation, and dissolution of Yelverton Farms, Ltd., a North Carolina corporation; (2) an order estopping Defendant Edmundson from disputing Plaintiff's ownership of 1,333.3 shares of Yelverton Farms, Ltd. stock; and (3) damages flowing from violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). The factual and procedural history of this case is fully and accurately summarized in the M&R and will not be repeated here.

## II.  STANDARD OF REVIEW

A district court may "designate a magistrate judge . . . to submit . . . proposed findings of fact and recommendations for the disposition" of a variety of motions. 28 U.S.C. § 636(b)(1)(B). The court then must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1). Upon review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Rule 12 requires that a court dismiss an action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving the existence of subject matter jurisdiction. *See, e.g., Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). The court may not address the merits of the case until subject matter jurisdiction has been established. *Id.* "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the

---

[2] Plaintiff's motion seeking leave to reply [DE-66] is ALLOWED to the extent the court considered the arguments contained therein. No further briefing on this issue will be accepted.

2

pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Subject matter jurisdiction does not exist where the plaintiff lacks standing to bring his claims. *See, e.g., Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230–31 (4th Cir. 2008).

## III. DISCUSSION

### A. Plaintiff's M&R Objections

Plaintiff raises eight objections: (1) bankruptcy courts have no constitutional authority to make determinations of property interests within the Debtor Estate under state law; (2) the bankruptcy court made no determination as to the Debtor's stock ownership; (3) the ownership of the stock in Yelverton Farms, Ltd., must be determined by the District Court in the Eastern District of North Carolina; (4) the M&R overlooked Plaintiff's equitable ownership of the stock; (5) the M&R is an incomplete resolution of the claims in this consolidated case, as it does not address Plaintiff's standing as an investor in Yelverton Farms, Ltd.; (6) Plaintiff's amended complaint properly asserts equitable defenses; (7) *Burford* abstention is inapplicable to statutory claims for monetary compensation; and (8) the M&R must be vacated because the Plaintiff was not allowed a hearing on his objections to judicial notice.

#### 1. Objections One through Four

Plaintiff's first four objections dispute the M&R's conclusions regarding ownership of the Yelverton Farms, Ltd. stock. The facts relevant to this issue are described in the M&R thusly:

> Plaintiff originally filed for Chapter 11 Bankruptcy, but on August 20, 2010, his case was converted to Chapter 7 and a Bankruptcy Trustee was appointed. *In re Yelverton*, No. 09-00414 (Bankr. D.C.), Aug. 20, 2010 Order [DE-323]. As a result of the conversion of Plaintiffs bankruptcy case, this court in *Yelverton I* determined that Plaintiff lacked standing to pursue his claims and ordered that the case be dismissed unless the Bankruptcy Trustee filed a notice of substitution. *Webster v. Yelverton Farms, Ltd.* [(*Yelverton I*)], No. 5:09-CV-00331-FL (E.D.N.C.) Mar. 7, 2011 Order [DE-120]. Ultimately, the Bankruptcy Trustee did

3

file a Notice of Substitution and prosecuted the case on behalf of the estate. *Id.* [DE-122].

On December 7, 2009, prior to the conversion of his case to Chapter 7, Plaintiff instituted an adversary proceeding against Atkinson, asserting claims of misrepresentation and tortious interference and seeking $400,000.00 in compensatory damages and $200,000.00 in punitive damages. *Yelverton v. Atkinson*, No. 09-10051 (Bankr. D.C.) Compl. [DE-l]. Plaintiff and Atkinson entered into a settlement agreement on August 17, 2010, whereby Plaintiff agreed to dismiss his claims against Atkinson in exchange for Atkinson renouncing any interest in any stock or interest in Yelverton Farms, Ltd., effective as of May 30, 2008, and the bankruptcy court entered a judgment approving the settlement on January 25, 2011. *Id.*, Jan. 11, 2011 Order [DE-50].

Thereafter, the Bankruptcy Trustee reached a settlement agreement with Defendants (who were named in an adversary proceeding along with other individuals) on March 23, 2012, whereby the parties agreed that the trustee would dismiss all claims against the defendants and transfer the stock from the bankruptcy estate to the defendants in exchange for a payment of $110,000.00, and this settlement agreement was approved by the Bankruptcy Court on June 19, 2012. *Id.* June 19, 2012 Order [DE-477]. Based on the settlement agreement, Yelverton was dismissed in this court. *Webster v. Yelverton Farms, Ltd.*, No. 5:09-CV-00331-FL (E.D.N.C.) July 17, 2012 Order [DE-142]. Plaintiff sought to have the settlement agreement in the bankruptcy court set aside through the filing of various motions, but was unsuccessful. On appeal, the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit both affirmed the settlement agreement. *In re Yelverton*, No. 1:12-CV-01539-CRC (D.D.C. Aug. 6, 2014) [DE-8, -9]; *In re Yelverton*, No. 14-7149 (D.C. Cir. Mar. 9, 2015) (per curiam).

The court reviewed the public records and finds this summary to be accurate. From the facts contained in the public record, it is clear Atkinson relinquished any claim to the Yelverton Farms, Ltd. stock effective May 30, 2008. Accordingly, the stock belonged to the bankruptcy estate such that it could properly be transferred from the estate to the Defendants. Because the stock was transferred to the Defendants pursuant to the settlement agreement approved by the bankruptcy court on June 19, 2012 and affirmed by both the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit,

4

Plaintiff has no ownership interest in the stock. Accordingly, Plaintiff lacks standing and his claims must be dismissed.

### 2. Objection Five

Next, Plaintiff objects that the M&R addresses his claims based only on his status as a stockholder in Yelverton Farms, Ltd. and fails to address his standing as an investor. Specifically, Plaintiff argues that his status as a "past 'investor'" entitles him to "Article III and statutory 'standing' for his claims under the UDTPA." Pl.'s Obj. [DE-64] ¶ 33. Plaintiff's claim under the UDTPA alleges that Defendant Edmundson "breach[ed] her fiduciary duties to Yelverton ... and thereby Edmundson has violated N.C.G.S, Section 75-1.1 of the Unfair and Deceptive Trade Practices Act, where a breach of fiduciary duties in a business context is such a violation."

Generally, a corporation's officers and directors owe a fiduciary duty to the corporation and its shareholders. *See, e.g.*, 3 Fletcher Cyclopedia of the Law of Corporations § 837.50. In appropriate circumstances, a shareholder of a corporation may bring a derivative suit on behalf of the corporation alleging violations of those fiduciary duties. *Green v. Freeman*, 367 N.C. 136, 142, 749 S.E.2d 262, 268 (2013). Here, because Plaintiff is not a shareholder of Yelverton Farms, Ltd., he lacks standing to bring a derivative suit.

Nevertheless, a non-shareholder, just like a shareholder, may bring suit in his individual capacity against corporate officers and directors if he sufficiently alleges (1) the wrongdoer owed him a special duty, and (2) he suffered a personal injury "distinct from the injury sustained by ... the corporation itself" (the *Barger* test). *Green*, 367 N.C. at 142, 749 S.E.2d at 268 (quoting *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 661, 488 S.E.2d 215, 221 (1997)). Under the first prong, a special duty is established "by facts showing that defendants owed a duty

5

to plaintiffs that was personal to plaintiffs ... and was separate and distinct from the duty defendants owed the corporation." *Barger*, 346 N.C. at 661, 488 S.E.2d at 221. Under the second prong, the loss of an investment is not considered a personal injury because it "'is identical to the injury suffered by' the corporate entity as a whole." *Id.* at 144, 749 S.E.2d at 269 (quoting *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 336, 525 S.E.2d 441, 444 (2000)). This is true "[e]ven when one person contributes a disproportionate amount of the investment and thus bears a correspondingly greater loss." *Id.* Here, Plaintiff fails to allege facts in support of either *Barger* factor. Accordingly, he lacks standing to pursue his claims as a non-shareholder.

### 3. **Objection Six**

Next, Plaintiff argues that invocation of judicial estoppel, equitable estoppel, and quasi-estoppel against Defendant Edmundson is proper. Under each theory, Plaintiff requests the court estop Edmundson from disputing Plaintiff's ownership of the Yelverton Farms, Ltd. stock on the basis that she has made contrary arguments and representations in previous cases. As the M&R points out, however, the court is independently obligated to assess whether subject matter jurisdiction exists, and must dismiss any case where subject matter is lacking. Fed. R. Civ. P. 12(h)(3). The lack of subject matter jurisdiction is abundantly clear from the public record, independent of any arguments by Defendant Edmundson.

### 4. **Objection Seven**

In Plaintiff's seventh objection, he argues *Burford* abstention is inappropriate in this case because it is inapplicable to statutory claims for monetary compensation. As the M&R correctly observes, however, the relief Plaintiff seeks in his first claim—judicial dissolution, receivership,

6

and liquidation—are inherently equitable and discretionary remedies. For the reasons discussed below, *Burford* abstention is appropriate here.

Under the *Burford* doctrine, "[a] federal court may abstain from hearing a case or claim over which it has jurisdiction to avoid needless disruption of state efforts to establish coherent policy in an area of comprehensive state regulation." *Friedman v. Revenue Mgmt. of N.Y., Inc.*, 38 F.3d 668, 671 (2nd Cir. 1994) (quoting *Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943)). Thus, "federal courts may decline to exercise their jurisdiction . . . where denying a federal forum would clearly serve an important countervailing interest." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). In considering abstention, the court is to weigh "the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court" against "the State's interests in maintaining uniformity in the treatment of an essentially local problem, and retaining local control over difficult questions of state law bearing on policy problems of substantial public import." *Id.* at 728 (internal quotations omitted). This analysis "only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'" *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)).

The Fourth Circuit has explained the *Burford* abstention standard thusly:

> The Supreme Court has admonished the federal courts to respect the efforts of state governments to ensure uniform treatment of essentially local problems. Principles of federalism and comity require no less. Basic abstention doctrine requires federal courts to avoid interference with a state's administration of its own affairs. Though "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," its importance in our system of dual sovereignty cannot be underestimated. It safeguards our federal system from the "[d]elay, misunderstanding of local law, and needless conflict with [a] state policy" that inevitably result from federal judicial intrusions into areas of core state prerogative.

7

*Johnson v. Collins Entm't Co.*, 199 F.3d 710, 719 (4th Cir. 1999) (alterations in original) (internal citations omitted). This court has not found a Fourth Circuit opinion on point. As noted in the M&R, however, at least one district court has held that dissolution of a state corporation qualifies as an exceptional circumstance warranting abstention pursuant to *Burford*. *Ives v. Advanced Broadband Sols., Inc.*, No. Civ. A. DKC 2003-0848, 2004 WL 180043 (D. Md. Jan. 23, 2004).[3] In *Ives*, the court declined to exercise jurisdiction over a claim for dissolution of a Virginia corporation, noting the "comprehensive scheme" and "detailed provisions" related to corporate dissolution set out by the state of Virginia. *Id.* at *4. *Cf. HWC Wire & Cable Co. v. Mirant Mid-Atl., LLC*, No. DKC 10-0731, 2010 WL 2431018, at *4 (D. Md. June 10, 2010) (rejecting abstention in a "relatively uncomplicated area of state law"—mechanic's liens). The court noted that "the right to control . . . the dissolution of a corporation without its consent belongs to the state which created the corporation." *Ives*, 2004 WL 180043, at *4 (citing 19 Am. Jur. 2d, Corporations § 2734). While unpublished, *Ives* is nevertheless valuable for its persuasive authority. *See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (recognizing unpublished decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning").

Here, Plaintiff seeks judicial dissolution of Yelverton Farms, Ltd., a North Carolina corporation. Corporate dissolution in North Carolina is governed by Article 14 of the General Statutes. Judicial dissolution, specifically, is addressed in §§ 55-14-30 through -34, which vest jurisdiction over such claims in the North Carolina Superior Court. Like the Virginia statutes

---

[3] Courts in other circuits agree. *See, e.g., Sojitz Am. Capital Corp. v. Keystone Equip. Fin. Corp.*, 88 F. Supp. 3d 59 (D. Conn. 2015); *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247 (S.D.N.Y. 2008); *Nutronics Imaging, Inc. v. Danan*, No. Civ. A. 96-2950, 2000 WL 33128504, at *1 (E.D.N.Y. July 27, 2000); *Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289 (E.D.N.Y. 1999); *Armenian Assembly of Am., Inc. v. Cafesjian*, 772 F. Supp. 2d 129, 160 (D.D.C. 2011); *Cammack New Liberty, LLC v. Int'l Greetings USA, Inc.*, 653 F. Supp. 2d 709, 714 (E.D. Ky. 2009); *Patel v. Oakwin Lodging Inc.*, No. 308-CV-206-J-32MCRCA, 2008 WL 3365233, at *1 (M.D. Fla. Aug. 8, 2008); *Friedman*, 38 F.3d at 671.

considered in *Ives*, North Carolina's corporate regulations are comprehensive and detailed. In fact, the state has dedicated the North Carolina Business Court to adjudicating complex business disputes. Accordingly, this court concludes that corporate dissolution in North Carolina is an "essentially local matter," and as such, abstention is appropriate. Accordingly, if subject matter jurisdiction exists over Plaintiff's claim for judicial dissolution, receivership, and liquidation, the court declines to exercise it.

### 5. **Objection Eight**

In Plaintiff's final objection, he argues he was deprived of a hearing on his objections to the court's taking judicial notice of decisions in other courts. Plaintiff argues that, while the court is free to take judicial notice of such decisions, a hearing is required on any objections.

The court may take judicial notice of any fact "that is not subject to reasonable dispute," either because it "is generally known within the trial court's territorial jurisdiction," or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Here, the court has not taken judicial notice of any facts, but has considered the evidence related to subject matter jurisdiction and reached a conclusion based on that evidence.

Further, Plaintiff is not entitled to a hearing on his objection to judicial notice. Rule 201(e) of the Federal Rules of Evidence provides that "a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." Fed. R. Evid. 201(e). A party's opportunity to be heard need not take the form of a formal hearing, however. *See, e.g., Amadasu v. The Christ Hosp.*, 514 F.3d 504, 508 (6th Cir. 2008) ("Since Amadasu had an opportunity to be heard on the issue of judicial notice through the filing of his objections to the magistrate judge's report and recommendation and the filing of his request for a hearing, a

9

formal hearing was not necessary in this case." (citing *Am. Stores Co. v. Comm'r of Internal Revenue*, 170 F.3d 1267, 1271 (10th Cir. 1999))). Here, Plaintiff thoroughly argued his reasons for objecting to the court's taking judicial notice in his response to the motion to dismiss. Plaintiff's objections to the M&R reiterated his position. Thus, even if the court did take judicial notice, it has heard and considered Plaintiff's arguments on the issue. A formal hearing on this matter is not required and would not aid the court in its decision.

## B. Plaintiff's Requests for Judicial Notice

Plaintiff filed three motions [DE-50, -53, -56] requesting the court take judicial notice. The first motion, at docket entry 50, requests judicial notice of a Petition for Writ of Mandamus filed by Plaintiff in a case before the North Carolina Superior Court—*Yelverton v. Edmundson and Marm*, Case No. 13-CVS-543. The petition requests the court in that case make a decision on a motion filed by Plaintiff. The second motion, at docket entry 53, requests judicial notice of "certain documents submitted to this District Court by the Defendants, who have raised material disputes of fact as to the Plaintiff's claims, or argue that these allegations of fact were not made by the Plaintiff." The third motion, at docket entry 56, requests judicial notice of the testimony of Bankruptcy Trustee Wendell W. Webster in a hearing before the Bankruptcy Court in Washington, D.C. None of these motions point to a *fact that is beyond reasonable dispute*, as required by Rule 201 of the Federal Rules of Evidence. Accordingly, judicial notice as requested by Plaintiff is improper.

Finally, at docket entry 57, Plaintiff moves to correct and supplement the motion requesting judicial notice filed at docket entry 56. This motion is DISMISSED as moot.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

(1) The Memorandum and Recommendation [DE-63] is ADOPTED;

(2) Plaintiff's objection [DE-64] is OVERRULED;

(3) Defendants' motion to dismiss the amended complaint [DE-18] is ALLOWED;

(4) Plaintiff's claims against Defendant Edmundson and Yelverton Farms, Ltd. are DISMISSED with prejudice;

(5) Plaintiff's motions for judicial notice [DE-50, -53, -56] are DENIED;

(6) Plaintiff's motion to correct and supplement his request for judicial notice [DE-57] is DISMISSED as moot; and

(7) Plaintiff's motion for leave to reply [DE-66] is ALLOWED in part.

SO ORDERED.

This, the 12 day of October, 2016.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge