IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| STEPHEN THOMAS YELVERTON, *as Assignee of the claims of Wade H. Atkinson, Jr.*, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:15-CV-134-F |
| | ) | |
| PHYLLIS Y. EDMUNDSON AND YELVERTON FARMS, LTD., | ) ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| STEPHEN THOMAS YELVERTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:16-CV-31-F |
| | ) | |
| YELVERTON FARMS, LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER AND MEMORANDUM AND RECOMMENDATION

This matter is before the court on the following motions: Defendant Yelverton Farms, Ltd.'s

("Defendant" or "Yelverton Farms") motion to dismiss the amended complaint of *pro se* Plaintiff

Steven Thomas Yelverton ("Plaintiff") for lack of subject matter jurisdiction and for failure to state

a claim upon which relief can be granted pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules

of Civil Procedure [DE-22, No. 5:16-CV-00031-F]; Plaintiff's Motion to Strike Exhibits [DE-21,

No. 5:16-CV-00031-F]; and Plaintiff's Motion for Evidentiary Hearing and Request for Judicial

Notice [DE-31, No. 5:16-CV-00031-F].[1] All response briefing is complete or the time for filing such briefing has elapsed, and the pending motions are ripe for adjudication. These motions were referred to the undersigned for an order or for a recommendation to the district court as necessary. June 30, 2016 Order [DE-52]; *see also* 28 U.S.C. §§ 636(b)(1)(A), (B); Local Civil Rule 72.3(c). For the reasons set forth below, Plaintiff's motion to strike [DE-21, No. 5:16-CV-00031-F] is denied as moot, Plaintiff's motion for evidentiary hearing and request for judicial notice [DE-31, No. 5:16-CV-00031-F] is denied, and it is recommended that Defendant's motion to dismiss [DE-21] be granted.

## I. BACKGROUND

Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis* on January 19, 2016. [DE-1, No. 5:16-CV-00031-F]. Plaintiff's motion was granted [DE-4, No. 5:16-CV-00031-F] and the initial Complaint was filed on January 25, 2016 [DE-5, No. 5:16-CV-00031-F]. Defendant filed a Motion to Dismiss on February 19, 2016 [DE-15, No. 5:16-CV-00031-F], and on March 11, 2016, Plaintiff filed an Amended Complaint as of right [DE-20, No. 5:16-CV-00031-F]. On March 14, 2016, Plaintiff filed the Motion to Strike Exhibits, seeking to strike exhibits attached to Defendant's Motion to Dismiss filed on February 19, 2016 [DE-21, No. 5:16-CV-00031-F], to which Defendant responded [DE-26, No. 5:16-CV-00031-F] and Plaintiff filed a Reply [DE-27, No. 5:16-CV-00031-F]. Defendant filed the instant Motion to Dismiss on March 24, 2016 [DE-22, No. 5:16-CV-00031-F], to which Plaintiff responded [DE-28, No. 5:16-CV-00031-F] and Defendant filed a Reply [DE-29, No. 5:16-CV-00031-F]. Plaintiff then filed a Motion for Evidentiary Hearing and Request for Judicial Notice on May 2, 2016 [DE-31, No. 5:16-CV-00031-F].

---

[1] On June 24, 2016, the court consolidated case numbers 5:15-CV-00134-F and 5:16-CV-00031-F, designating case number 5:15-CV-00134-F as the lead case going forward. [DE-49]. Unless otherwise denominated, all citations to docket entries are to the lead case.

2

On June 30, 2016, the court referred certain motions in the lead case and the instant motions to the undersigned. [DE-52]. On September 9, 2016, the undersigned recommended the district court grant the defendants' motion to dismiss Plaintiff's claims for judicial dissolution, liquidation, and receivership and for unfair and deceptive trade practices in the lead case for lack of standing where Plaintiff failed to allege that he owned any stock in Yelverton Farms, Ltd., and alternatively that the court invoke the *Burford* abstention doctrine as to Plaintiff's claim for judicial dissolution, liquidation, and receivership.[2] [DE-63]. On October 12, 2016, the district court adopted the recommendation and dismissed Plaintiff's claims with prejudice. [DE-67]. Plaintiff filed a Motion for Reconsideration [DE-68] and a Motion to Alter or Amend [DE-69], to which the defendants responded [DE-70, -72], and Plaintiff replied [DE-71, -73]. On January 30, 2017, the district court denied Plaintiff's Motion for Reconsideration and Motion to Alter or Amend. [DE-74].

In addition to the lead case, Plaintiff has filed two prior actions in this court involving Defendant related to the ownership of Yelverton Farms and both actions were dismissed. *See Webster v. Yelverton Farms Ltd.*, No. 5:09-CV-331-FL, 2011 WL 13128120 (E.D.N.C. March 7, 2011) (unpublished) (holding plaintiff lacked standing to assert claims for judicial dissolution and liquidation of Yelverton Farms, payment of dividends, and other relief because the claims became property of plaintiff Yelverton's bankruptcy estate upon conversion of the bankruptcy case from Chapter 11 to Chapter 7); *Yelverton v. Yelverton Farms, Ltd.*, No. 5:14-CV-365-FL, 2015 WL 847393 (E.D.N.C. Feb. 26, 2015) (unpublished) (dismissing all claims, including demand for judicial receivership of Yelverton Farms, for failure to state a claim upon which relief can be granted and for

---

[2] In the lead case, Yelverton Farms is named as a defendant along with Phyllis Y. Edmundson ("Edmundson"), the president and controlling stockholder of Yelverton Farms, Ltd. Am. Compl. [DE-17] at 4 ¶ 14.

3

lack of standing).

## II. FACTUAL ALLEGATIONS

Plaintiff, a resident of Arlington County, Virginia, has brought this action in diversity against Defendant, a closely-held North Carolina corporation, seeking monetary damages in an amount over $75,000.00. Am. Compl. [DE-20] at 1. According to Plaintiff, the instant complaint is based on new circumstances arising after January 28, 2016, such that the new facts and claims could not have been raised in Plaintiff's complaint in the lead case or in the original complaint in this case. *Id.* ¶ 1. Plaintiff alleges that he personally established Yelverton Farms in December 1993 for the sole purpose of growing hogs under a production contract (the "production contract") with Goldsboro Hog Farms, Inc. ("Goldsboro Hog Farms"). *Id.* at 4 ¶ 19. Acting upon the advice of counsel, Plaintiff incorporated Yelverton Farms in December 1993 as a closely-held North Carolina corporation. *Id.* at 5 ¶ 20. Plaintiff individually signed the production contract with Goldsboro Hog Farms in 1994 to engage in hog production using Yelverton Farms' facilities and Plaintiff had previously invested at least $700,000.00 in Yelverton Farms to build the required infrastructure for the operation, exclusive of land costs. *Id.* ¶ 21. Plaintiff is the sole signatory on the production contract and is designated as the sole grower in his individual capacity, and the production contract requires Plaintiff to personally provide management control and oversight of the operation at Yelverton Farms and to assure performance under the production contract. *Id.* ¶¶ 22, 23. Goldsboro Hog Farms' policy requires an individual to be the designated grower under a production contract, not a corporation, and Goldsboro Hog Farms has recognized Plaintiff in his individual capacity as the sole grower under the production contract since 1994. *Id.* ¶ 24.

Plaintiff filed for Chapter 11 Bankruptcy on May 14, 2009 in the District of Columbia and

4

scheduled the production contract as property of the estate, but sought to exempt it pursuant to 11 U.S.C. § 522. *Id.* at 6 ¶¶ 27-28. Between January and March 2014, Plaintiff received a letter of interest from a financially qualified person associated with Goldsboro Hog Farms, expressing a willingness to purchase the production contract and the hog finishing operations at Yelverton Farms for $1,200,000.00, excluding the real property. *Id.* ¶ 31. Plaintiff then communicated to Edmundson his willingness to share the proceeds of any sale with the stockholders, but she refused to share any proceeds with Plaintiff and indeed had stated in the past that she would not allow Plaintiff to receive any financial payout for his equity in the company. *Id.* at 6-7 ¶¶ 32-33. Plaintiff alleges that Edmundson has acted since at least August 13, 2015 to interfere with Plaintiff's management control of the company as the sole grower under the production contract, by disputing Plaintiff's authority to act under the production contract and deadlocking the company's management without any means to resolve the deadlock. *Id.* at 7 ¶ 35.

On March 12, 2015, Plaintiff became a shareholder in Yelverton Farms due to a written assignment from Wade H. Atkinson, Jr. ("Atkinson") of stock that Plaintiff had previously owned. *Id.* ¶ 36. Plaintiff contends that Atkinson acquired the stock in May 2008, such that Atkinson was the owner when Plaintiff filed for bankruptcy on May 14, 2009 and the stock did not become part of the bankruptcy estate and could not have been included in any settlement agreement entered into by the Trustee on behalf of the estate. *Id.* at 9 ¶¶ 43-44. On September 9, 2015, the Bankruptcy Court acted to compel abandonment of the production contract by the Chapter 7 Trustee, pursuant to 11 U.S.C. § 554(b). *Id.* at 8 ¶ 37. According to Plaintiff, at the hearing on the abandonment issue, Edmundson first argued that either she and/or Yelverton Farms owned the production contract. *Id.* ¶ 38. And after August 13, 2015, Edmundson acted through Yelverton Farms to encourage

5

Goldsboro Hog Farms to terminate the production contract with Plaintiff in favor of Edmundson and Yelverton Farms. *Id.* ¶ 39. Yelverton Farms provided defamatory information that Plaintiff had been disbarred in the District of Columbia and made suggestions of moral turpitude and fraud on his part. *Id.* The law firm of Warren Kerr Walston Taylor & Smith, LLC, which simultaneously served as counsel for both Yelverton Farms and Goldsboro Hog Farms, transmitted this defamatory information. *Id.* ¶ 40.

On January 28, 2016, Plaintiff received a letter notifying him that the production contract was terminated as of that date because Plaintiff had sold his interest in Yelverton Farms and was no longer affiliated with the company. *Id.* at 8-9 ¶¶ 41-42. The letter also acknowledged that Goldsboro Hog Farms had recognized Plaintiff as the sole grower under the production contract until January 28, 2016. *Id.* at 9 ¶ 48. According to Plaintiff, he is unaware of any sale or transfer of his stock other than his transfer to Atkinson in May 2008 and his subsequent reacquisition of that stock on March 12, 2015. *Id.* ¶ 43. Plaintiff believes that the actions taken since August 13, 2015, by Edmundson through Yelverton Farms to deadlock the management control, defame Plaintiff to Goldsboro Hog Farms, take the production contract from Plaintiff, and to squeeze out Plaintiff from participating in Yelverton Farms were done to prevent Plaintiff from receiving any compensation from the sale of the hog finishing operation to another market participant. *Id.* at 10 ¶ 49. Edmundson executed an affidavit on August 20, 2009, affirming that as the President and controlling stockholder of Yelverton Farms, she would operate the business of the corporation along with the other shareholders in compliance with their fiduciary obligations to the corporation and to its shareholders. *Id.* ¶ 51. Plaintiff contends that based on the August 20, 2009 affidavit, Plaintiff has a reasonable expectation that his rights as a minority stockholder and as the sole owner of the

6

production contract will not be violated. *Id.* ¶¶ 51-52.

Plaintiff asserts the following causes of action against Defendant: a claim for judicial dissolution, liquidation, and receivership of Yelverton Farms, Ltd. pursuant to N.C. Gen. Stat. §§ 55-14-30(2)(i), 55-14-30(ii), 55-14-31(a)-(d), and 55-14-32(a)-(e), based on Plaintiff's status as owner of the production contract as of January 25, 2016, and as a stockholder as of March 12, 2015, because the management deadlock is preventing the company from operating to the advantage of the stockholders and his reasonable expectations as a minority shareholder that he will receive fair treatment and not be squeezed out of the corporation without compensation have been frustrated; and a claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTP"), N.C. Gen. Stat. § 75-1.1, based on Defendant's breach of fiduciary duties owed to Plaintiff by Defendant and Edmundson, where Defendant acted since August 13, 2015 to defame Plaintiff before Goldsboro Hog Farms and other market participants, to squeeze out Plaintiff from the company, to encourage the termination of Plaintiff's interest in the production contract, and to prevent Plaintiff from receiving any compensation from the sale of corporate assets. Am. Compl. [DE-20, No. 5:16-CV-00031-F] at 13-14 ¶¶ 70-74. Plaintiff seeks damages of $700,000.00, representing his investment and equity in Yelverton Farms, and at least $300,000.00, representing the damage to his business and professional reputation, in addition to treble damages. *Id.* ¶ 75.

### III. STANDARD OF REVIEW

#### A. Fed. R. Civ. P. 12(b)(1)—Lack of Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1), a court must dismiss all or part of an action over which it lacks subject matter jurisdiction. Whether subject matter jurisdiction exists is a threshold question that must be addressed by the court before considering the merits of the case. *Jones v. Am. Postal*

7

*Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff, as the party opposing a Rule 12(b)(1) motion to dismiss, has the burden of proving that subject matter jurisdiction does, in fact, exist. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citations omitted). Further, in order to demonstrate the existence of subject matter jurisdiction, the plaintiff must show standing to assert his claims. *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230-31 (4th Cir. 2008) (citations omitted).

## B. Fed. R. Civ. P. 12(b)(6)—Failure to State a Claim upon which Relief can be Granted

Pursuant to Rule 12(b)(6), a court may dismiss an action which fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss tests the sufficiency of the facts pleaded in the complaint and the relevant inquiry is whether the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a motion to dismiss, a court is required to consider the complaint in the light most favorable to the plaintiff and to accept as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). "Threadbare recitals of the elements

8

of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts setting forth a cognizable claim under federal law. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390-91 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (holding that the court is not required to "conjure up questions never squarely presented . . . .").

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, this rule is subject to several exceptions. "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted). The court "may properly take notice of matters of public record" and "may also consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted); *see also Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (considering a statement attached to a motion to dismiss where "it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity.") (citations omitted). Exhibits

9

that may be incorporated within the pleadings under Rule 10(c) include documents such as affidavits, letters, contracts, and loan documentation. *Eagle Nation v. Market Force, Inc.*, 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001) (citation omitted). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c) . . . the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (citation omitted).

## IV. DISCUSSION

### A.    Plaintiff's Motion to Strike [DE-21, No. 5:16-CV-00031-F]

Plaintiff moves to strike as insufficient, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and Rule 7.1 of the Local Civil Rules, the exhibits attached to Defendant's motion to dismiss filed on February 19, 2016. [DE-21, No. 5:16-CV-00031-F]. These exhibits consist of nine orders in other cases involving the parties (from this court and other state and federal courts) and a memorandum filed by Defendant in another case in this court. *Id.* at 1; *see* Exhibits [DE-15, No. 5:16-CV-00031-F]. Defendant responded in opposition to the motion [DE-26, No. 5:16-CV-00031-F], and Plaintiff filed a reply [DE-27, No. 5:16-CV-00031-F]. On June 30, 2016, the court entered an order dismissing as moot Defendant's motion to dismiss the original complaint in this case, filed on February 19, 2016. [DE-52]. Accordingly, Plaintiff's motion to strike the exhibits attached to that motion is also moot, and is denied.

### B.    Plaintiff's Motion for Evidentiary Hearing and Request for Judicial Notice [DE-31, No. 5:16-CV-00031-F]

Plaintiff requests an evidentiary hearing pursuant to Rule 201(e) of the Federal Rules of Evidence as to Exhibit 1 attached to Defendant's Reply in support of the motion to dismiss [DE-29-1, No. 5:16-CV-00031-F], which consists of a Petition for Rehearing En Banc previously filed by

10

Plaintiff in a separate case in the District of Columbia Court of Appeals. [DE-31, No. 5:16-CV-00031-F]. Plaintiff also asks the court to take judicial notice of five exhibits attached to the motion, and for an evidentiary hearing as to those exhibits. *Id.* The exhibits consist of: (1) an excerpt from Black's Law Dictionary, (2) an August 20, 2009 affidavit authored by Edmundson, (3) several sections from the treatise *Robinson on North Carolina Corporation Law*, and (4) section 55-7-1 of the North Carolina General Statutes. *Id.* The time for filing a response elapsed without Defendant filing a memorandum in opposition.

The Federal Rules of Evidence provide that the court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute" either because it "is generally known within the trial court's territorial jurisdiction" or because the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)-(b). Pursuant to the rules, "a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." Fed. R. Evid. 201(e). While a party is entitled to an opportunity to be heard, a formal hearing is not required in every instance. *See Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507-08 (6th Cir. 2008) ("Since [the plaintiff] had an opportunity to be heard on the issue of judicial notice through the filing of his objections to the magistrate judge's report and recommendation and the filing of his request for a hearing, a formal hearing was not necessary in this case."); *see also Am. Stores Co. v. Comm'r of Internal Revenue*, 170 F.3d 1267, 1271 (10th Cir. 1999) ("To the extent American as such a proponent [of taking judicial notice] had a right to be heard, the court honored that right by duly considering American's briefs, which under the circumstances were sufficient to present its position."). In the context of a Rule 12 motion to dismiss, the court may consider matters of public record, such as court filings, and other documents

11

where the plaintiff does not challenge their authenticity. *See Phillips*, 572 F.3d at 180; *LCI Intern., Inc.*, 190 F.3d at 618. "Courts routinely take judicial notice of documents filed in other courts, not for the truth of the matters asserted but rather to establish the fact of such litigation and related filings." *Yelverton*, 2015 WL 847393, at *15 n.8 (quoting *Veteran Constructors, Inc. v. Beeler Barney & Assocs. Masonry Contractors, Inc.*, No. 2:13-CV-64-F, 2014 WL 4199238, at *3 (E.D.N.C. Aug. 22, 2014) (unpublished) (further citations omitted)).

Here, Plaintiff's request for a hearing as to the Petition for Rehearing En Banc attached as an exhibit by Defendant would not aid the court in its decision. As a publicly-available filing in another case, the petition is a matter of public record and may be considered by the court. Further, Plaintiff had an opportunity to fully present his argument in opposition by briefing the issue and accordingly, Plaintiff's request for a hearing is denied. Plaintiff also requests that the court take judicial notice of five attached exhibits after holding an evidentiary hearing, but has failed to point to any fact contained in these exhibits that is beyond reasonable dispute, as required by Rule 201. Accordingly, Plaintiff's request for judicial notice is improper and he is not entitled to a hearing on his request for judicial notice as to these exhibits. Plaintiff's motion for evidentiary hearing and request for judicial notice is thus denied.

## C.  Defendant's Motion to Dismiss [DE-22, No. 5:16-CV-00031-F]

Defendant moves to dismiss Plaintiff's Amended Complaint for lack of standing, for failure to state a claim upon which relief may be granted, and because some of Plaintiff's claims are barred by res judicata; on the grounds that the Amended Complaint is frivolous, malicious, and fails to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii); and based on the *Burford* abstention doctrine. Def.'s Mot. [DE-22, No. 5:16-CV-00031-F]; Def.'s Mem. [DE-

12

23, No. 5:16-CV-00031-F]; Def.'s Reply [DE-29, No. 5:16-CV-00031-F]. In response, Plaintiff

argues that he has standing to pursue his claims based on the March 12, 2015 assignment of stock

from Atkinson; *Burford* abstention does not apply to dissolution of family-held non-public

corporations or where a plaintiff is requesting monetary relief; Plaintiff's claims in the instant case

are not frivolous or malicious; and the Amended Complaint sufficiently pleads causes of action for

judicial dissolution, liquidation, and receivership and UDTP. Pl.'s Resp. [DE-28, No. 5:16-CV-

00031-F]. Plaintiff also objects to several exhibits filed by Defendant in connection with the motion

to dismiss, arguing that the exhibits are inadmissible hearsay and should be stricken, and in the

alternative requesting an evidentiary hearing. *Id.* at 4-6. Plaintiff's objections are without merit

where the exhibits at issue are rulings from other courts and as such are matters of public record that

the court may properly consider. Additionally, Plaintiff has had an opportunity to fully present his

argument in opposition by briefing the issue and accordingly, Plaintiff's request for a hearing is

denied.

### 1.    Standing

Defendant asserts that Plaintiff's claim for judicial dissolution, liquidation, and receivership

should be dismissed pursuant to Rule 12(b)(6) for lack of statutory standing, as Plaintiff has failed

to show that he is a shareholder in Yelverton Farms.[3] Def.'s Mem. [DE-23, No. 5:16-CV-00031-F]

at 3-4. In response, Plaintiff argues that he has standing to pursue his claims based on the March 12,

---

[3] In contrast, in the lead case, Defendant asserted that Plaintiff's claims should be dismissed for lack of standing pursuant to Rule 12(b)(1) where Plaintiff failed to show that he owned stock in Yelverton Farms. *See* Defs.' Mem. [DE-19] at 4-8, 10. However, Defendant now cites to *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011), for the proposition that "[a] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim." *Id.* (quoting *Baldwin v. Univ. of Pittsburgh Med.Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011)). "Statutory standing applies only to legislatively-created causes of action and concerns whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action." *Id.* (internal quotation marks and citation omitted).

13

2015 assignment of stock from Atkinson and contends that Defendant asserted in an earlier pleading that Plaintiff owned the stock at the relevant time. Pl.'s Resp. [DE-28, No. 5:16-CV-00031-F] at 1-2, 8-9. Plaintiff also requests an evidentiary hearing, contending that Defendant has created a material dispute of fact as to who owns the stock at issue. *Id.* Indeed, Plaintiff must be a shareholder in Yelverton Farms in order to bring his claim for judicial dissolution, liquidation, and receivership, as the Amended Complaint asserts that the claim is brought pursuant to N.C. Gen. Stat. §§ 55-14-30(2)(i) and/or (ii), 55-14-31(a)-(d), and 55-14-32(a)-(e). Am. Compl. [DE-20, No. 5:16-CV-00031-F]; *see* N.C. Gen. Stat. § 55-14-30(2) (providing that a court may dissolve a corporation "[i]n a proceeding by a shareholder" if certain conditions are met); *id.* § 55-14-31 (detailing the procedure for judicial dissolution); *id.* § 55-14-32 (detailing the procedure for placing a corporation into receivership when there is a judicial proceeding for corporate dissolution). Thus, if Plaintiff does not own stock in Yelverton Farms, he lacks standing to pursue his claim for judicial dissolution, liquidation, and receivership and this claim must be dismissed.[4]

Plaintiff made the same argument as to stock ownership in the lead case, contending that Atkinson owned the stock when Plaintiff filed for bankruptcy, such that the stock never became part of the bankruptcy estate. This court disagreed, however, holding that Plaintiff failed to show he had any ownership interest in the stock and dismissing Plaintiff's claims for judicial dissolution, liquidation, and receivership and UDTP. Oct. 12, 2016 Order [DE-67] at 3-5. This court stated:

---

[4] In the Amended Complaint, Plaintiff states that he asserts statutory and Article III standing as to the judicial dissolution, liquidation, and receivership claim both as a stockholder in the corporation since March 12, 2015 and as the owner of the production contract as of January 25, 2016. Am. Compl. [DE-20, No. 5:16-CV-00031-F] at 13 ¶ 72. Plaintiff alleges, however, that he entered into the production contract with Goldsboro Hog Farms in his individual capacity, *id.* at 4-5 ¶¶ 19-25, and accordingly has failed to show how this contract with a third party would give him any rights against Defendant, particularly where the relevant portion of the statute requires this type of claim to be brought by a shareholder of the corporation.

14

[f]rom the facts contained in the public record, it is clear Atkinson relinquished any claim to the Yelverton Farms, Ltd. stock effective May 30, 2008. Accordingly, the stock belonged to the bankruptcy estate such that it could properly be transferred from the estate to the Defendants. Because the stock was transferred to the Defendants pursuant to the settlement agreement approved by the bankruptcy court on June 19, 2012 and affirmed by both the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit, Plaintiff has no ownership interest in the stock. Accordingly, Plaintiff lacks standing and his claims must be dismissed.

*Id.* at 4-5. The same reasoning applies in the instant case. To the extent Plaintiff contends Defendant asserted that Plaintiff owned the stock at the relevant time in another pleading, this argument is without merit where documents of public record demonstrate that the stock was treated as part of the bankruptcy estate, and the documents of public record must prevail over Plaintiff's allegations when the two conflict. *Fayetteville Inv'rs*, 936 F.2d at 1465. Accordingly, as the allegations in the Amended Complaint fail to show that Plaintiff owns any stock in Yelverton Farms, he has failed to demonstrate that he has standing to pursue his claim for judicial dissolution, liquidation, and receivership. It is thus recommended that Defendant's motion to dismiss for lack of statutory standing pursuant to Rule 12(b)(6) be granted. As the motion is resolved on the parties' filings, Plaintiff's request for an evidentiary hearing is denied.

## 2. *Burford* Abstention

Defendant also incorporates its alternative argument from its motion to dismiss in the lead case that Plaintiff's claim for judicial dissolution, liquidation, and receivership should be dismissed pursuant to Rule 12(b)(1) by invoking the *Burford* abstention doctrine. Def.'s Mem. [DE-23, No. 5:16-CV-00031-F] at 3; *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). There, Defendant argued that federal courts generally abstain from resolving state corporate dissolution claims where the state has a uniform regulatory scheme for dissolving the corporations it has created and regulated. Defs.'

15

Mem. [DE-19] at 2-3. Defendant contended that North Carolina has established a unified system of review for corporate dissolution cases, as evidenced by the statutory scheme for the discretionary remedies of voluntary, administrative, and involuntary corporate dissolution and the establishment of the North Carolina Business Court. *Id.* In response, Plaintiff argues that *Burford* abstention does not apply to dissolution of closely-held family-owned non-public corporations, and cites to cases within the Fourth Circuit where federal courts have exercised diversity jurisdiction to resolve such claims. Pl.'s Resp. [DE-28, No. 5:16-CV-00031-F] at 2-4. Plaintiff also argues that *Burford* abstention may not be invoked where monetary relief is at issue. *Id.*

This court previously held in the lead case that even if Plaintiff had standing to pursue his claim for judicial dissolution, receivership, and liquidation, *Burford* abstention would be appropriate and this court would decline to exercise subject matter jurisdiction over this claim. Oct. 12, 2016 Order [DE-67] at 6-9. This court reasoned as follows:

> [c]orporate dissolution in North Carolina is governed by Article 14 of the General Statutes. Judicial dissolution, specifically, is addressed in §§ 55-14-30 through -34, which vest jurisdiction over such claims in the North Carolina Superior Court. Like the Virginia statutes considered in [*Ives v. Advanced Broadband Sols., Inc.*, No. Civ. A. DKC-2003-0848, 2004 WL 180043, at *4 (D. Md. Jan. 23, 3004) (unpublished)], North Carolina's corporate regulations are comprehensive and detailed. In fact, the state has dedicated the North Carolina Business Court to adjudicating complex business disputes. Accordingly, this court concludes that corporate dissolution in North Carolina is an "essentially local matter," and as such, abstention is appropriate. Accordingly, if subject matter jurisdiction exists over Plaintiff's claim for the judicial dissolution, receivership, and liquidation, the court declines to exercise it.

*Id.* at 8-9. The same reasoning applies here, and as such, even if Plaintiff had standing to pursue his claim for judicial dissolution, liquidation, and receivership, it is recommended in the alternative that the court apply the *Burford* abstention doctrine to dismiss this claim without prejudice pursuant to Rule 12(b)(1). Where Defendant's motion to dismiss Plaintiff's claim for judicial dissolution,

16

liquidation, and receivership is resolved on the grounds of standing and abstention, the undersigned does not reach Defendant's alternative arguments in support of dismissal.

### 3. Rule 12(b)(6)

Defendant argues that Plaintiff's UDTP claim should be dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). Def.'s Mem. [DE-23, No. 5:16-CV-00031-F] at 4-6. Specifically, Defendant contends that it cannot be liable for a breach of fiduciary duty by Edmundson pursuant to a conspiracy or an aiding and abetting claim; North Carolina corporations do not owe their shareholders fiduciary duties; Plaintiff has failed to allege sufficient facts in support of his defamation claim; Plaintiff's claim of being squeezed out of the corporation fails where he is not a shareholder in the corporation; and Plaintiff's claims that Defendant encouraged termination of the production contract and prevented Plaintiff from receiving compensation for the sale of corporate assets have been previously dismissed in an earlier case. *Id.* In response, Plaintiff contends that he has sufficiently alleged a claim for UDTP where Defendant breached fiduciary duties it owed as an agent to Plaintiff as the owner and principal of the production contract; Defendant acted to squeeze out Plaintiff by taking away the production contract without paying any compensation to Plaintiff; Plaintiff sufficiently alleged a claim for defamation *per se*; Plaintiff does not allege civil conspiracy or aiding and abetting claims against Edmundson; and Plaintiff's claims arose after the commencement of his earlier case. Pl.'s Resp. [DE-28, No. 5:16-CV-00031-F] at 12-17.

The Amended Complaint states as follows as to Plaintiff's UDTP claim:

it is demanded that Yelverton Farms, Ltd., as proxy for and in privity with Edmundson, as its President and controlling stockholder, be found liable for violation of N.C.G.S., Section 75-1.1, by breaching fiduciary duties owed to Plaintiff

17

Yelverton by it and Edmundson, where it has acted since August 13, 2015, to defame Plaintiff Yelverton before Goldsboro Hog Farms, Inc., and other market participants, by casting false aspersions on him as an attorney and business person, where it has acted to "squeeze" out plaintiff Yelverton from the corporation, where it has acted to encourage the termination of Plaintiff Yelverton's interest in the Production Contract, and where it has acted to prevent Plaintiff Yelverton from receiving any compensation from the sale of the assets of the corporation to any other market participants.

Am. Compl. [DE-20, No. 5:16-CV-00031-F] at 14 ¶ 74. Thus, Plaintiff's UDTP claim is grounded in Defendant's alleged breach of fiduciary duties owed to Plaintiff. If Plaintiff has failed to sufficiently allege such a fiduciary relationship, this claim must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In responding to the motion to dismiss, Plaintiff contends that the fiduciary relationship stems from the agency relationship between Plaintiff and Defendant as to the production contract, and points to paragraphs 22-26, 31, 35, and 50-52 in the Amended Complaint to show the existence of that relationship. Pl.'s Resp. [DE-28, No. 5:13-CV-00031-F] at 13. Those paragraphs state as follows:

22. Plaintiff Yelverton is the sole signatory on the Production Contract with Goldsboro Hog Farms, Inc., and is designated in his individual capacity as the sole Grower.

23. Plaintiff Yelverton is required by the terms of the Production Contract to personally provide management control and oversight of the pig production operation at YFL, and to personally assure performance under the Contract.

24. The policy of Goldsboro Hog Farms, Inc. is to allow only an individual to be the designated Grower under the Production Contract, and *not* to allow a corporation to be designated as the Grower.

25. Since 1994, Goldsboro Hog Farms, Inc., has recognized only Plaintiff Yelverton in his individual capacity as the sole Grower under the Production Contract, and *not* YFL, nor Edmundson.

26. The corporate policy of Goldsboro Hog Farms, Inc. is to provide at least a one year written notice to a Grower before terminating his Production Contract, or

18

assigning it to another individual. This policy is required by N.C. statutory law.

. . . .

31. In January–March 2014, Plaintiff Yelverton as the sole Grower under the Production Contract, received a "letter of interest" from Goldsboro Hog Farms, Inc., that a financially qualified person associated with it was willing to acquire the Production Contract and the pig finishing operations at YFL, for some $1.2 Million, exclusive of the surrounding land.

. . . .

35. Since at least August 13, 2015, Edmundson has repeatedly and continuously acted to interfere with Plaintiff Yelverton's management control of YFL, as the sole Grower under the Production Contract, by disputing his authority to act under the Contract, and thereby to "deadlock" the management of YFL, with *no* means to break it.

. . . .

50. On August 20, 2009, Edmundson, as President and controlling stockholder of YFL, had executed an Affidavit affirming that she "has and will continue to carry on the business of the corporation, preserve the corporate assets, protect the Production Contract, protect the financial interests . . . of all . . . shareholders, and that she and the other shareholders are operating the corporation for the benefit of the shareholders in compliance with their fiduciary obligations to the corporation and to its shareholders.

51. As based upon the Affidavit of Edmundson, executed August 20, 2009, Plaintiff Yelverton as the sole owner of the Production Contract has the "reasonable expectation" that his rights under it will *not* be violated by YFL or by its controlling stockholders and officers, nor any fiduciary duties [owed] to him will be violated.

52. As based upon the Affidavit of Edmundson, executed August 20, 2009, Plaintiff Yelverton as a minority stockholder in YFL has the "reasonable expectation" that his rights as a minority stockholder will *not* be violated by YFL, or by its stockholders and officers, nor any fiduciary duties owed to him will be violated.

Am. Compl. [DE-20, No. 5:16-CV-00031-F] at 5-7, 10 ¶¶ 22-26, 31, 35, 50-52.

"An agency relationship 'arises when parties manifest consent that one shall act on behalf

of the other and subject to his control.'" *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 74, 698

19

S.E.2d 757, 764 (2010) (quoting *Miller v. Piedmont Steam Co.*, 137 N.C. App. 520, 524, 528 S.E.2d 923, 926 (2000)).

> Consent of both principal and agent is necessary to create an agency. The principal must intend that the agent shall act for him, the agent must intend to accept the authority and act on it, and the intention of parties must find expression either in [words] or conduct between them.

*Ellison v. Hunsinger*, 237 N.C. 619, 628, 75 S.E.2d 884, 891 (1953) (quotation omitted). Construing the Amended Complaint in the light most favorable to Plaintiff, he has alleged that he is the sole signatory to the production contract with Goldsboro Hog Farms, which recognizes Plaintiff in his individual capacity as the sole grower under the contract, and the production contract appears to unilaterally designate management control and oversight of the hog growing operation to Plaintiff. While the Amended Complaint repeatedly refers to fiduciary duties owed by Defendant to Plaintiff, the court is not required to accept these bare legal conclusions. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (quoting *Twombly*, 550 U.S. at 570)). And the Amended Complaint is clear that Plaintiff is the sole signatory to the production contract, and Defendant is not recognized as a grower under the production contract. Thus, Plaintiff has failed to show "[c]onsent of both principal and agent" as required for creation of an agency relationship which would result in a fiduciary relationship between the parties, nor has Plaintiff shown that Defendant actually accepted Plaintiff's authority. *Ellison*, 237 N.C. at 628, 75 S.E.2d at 891. To the extent that Plaintiff might argue that any fiduciary relationship arises out of his status as a shareholder, as discussed above, Plaintiff has failed to show that he owned any stock in Yelverton Farms at the relevant time. Accordingly, it is recommended that Plaintiff's UDTP claim be dismissed pursuant to Rule 12(b)(6) for failure to

20

sufficiently allege the existence of a fiduciary relationship between the parties.[5]

In the alternative, even if a fiduciary relationship existed between the parties, Plaintiff's UDTP claim is still subject to dismissal on other grounds. Plaintiff alleges that Defendant acted to squeeze out Plaintiff from the corporation and prevent him from receiving any compensation from the sale of corporate assets, Am. Compl. [DE-20, No. 5:16-CV-00031-F] at 14 ¶ 74, but as discussed above, Plaintiff has failed to show that he is a shareholder in Yelverton Farms. Additionally, Plaintiff claims that Defendant defamed him before Goldsboro Hog Farms, alleging:

> 39. After August 13, 2015, Edmundson acted through YFL to encourage Goldsboro Hog Farms, Inc. to terminate the Production Contract with Plaintiff Yelverton in favor of her and YFL. Upon information and belief, this was done by YFL providing defamatory information that Plaintiff had been "disbarred" by the District of Columbia Bar, and YFL making suggestions of moral turpitude and fraud by him.
>
> 40. Upon information and belief, the defamatory information about Plaintiff Yelverton was transmitted by the law firm of Warren Kerr Walston Taylor & Smith, LLC, who simultaneously served as local counsel for both YFL and Goldsboro Hog Farms, Inc., and has served as local counsel for YFL since at least May 2008.

*Id.* at 8 ¶¶ 39-40. "When pleading a defamation claim, the alleged defamatory statement made or published by the defendant does not have to be set out verbatim in the plaintiff's complaint if alleged 'substantially in *haec verba*, or with sufficient particularity to enable the court to determine whether the statement was defamatory.'" *Esancy v. Quinn*, No. 5:05 CV 26, 2006 WL 322607, at *4 (W.D.N.C. Feb. 10, 2006) (unpublished) (quoting *Andrews v. Elliot*, 109 N.C. App. 271, 426 S.E.2d 430 (1993) (further quotation omitted)). Even so, "allegations of time and place are material for purposes of testing the sufficiency of a pleading and, therefore, should be plead in the complaint."

---

[5] Indeed, this is not the first time Plaintiff has tried to raise such a claim in this court. *See Yelverton*, 2015 WL 847393, at *13 (dismissing Plaintiff's claim for breach of fiduciary duty arising out of an agency relationship where the allegations were insufficient to show the existence of an agency relationship). While this earlier dismissal has no preclusive effect in the instant case, as Plaintiff is alleging facts about a later time, it is noteworthy that Plaintiff continues to assert similar claims against Defendant and Edmundson raising essentially the same issues.

*Id.* (citing Fed. R. Civ. P. 9(f)) (dismissing a defamation claim pursuant to Rule 12(b)(6) where the plaintiff failed to plead the time and place of the alleged defamatory statement); *accord Bowman v. Reid*, No. 5:14CV179-RLV, 2015 WL 4508648, at \*7 (W.D.N.C. July 24, 2015) (unpublished). Here, Plaintiff has arguably plead the substance of the alleged defamatory statements, but has failed to allege the time and place of the statements at issue. Finally, Plaintiff contends that Defendant encouraged the termination of Plaintiff's interest in the production contract. Am. Compl. [DE-20, No. 5:16-CV-00031-F] at 14 ¶ 74. In order to show interference with contract, a plaintiff must show

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Labs. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citing *Childress v. Abeles*, 240 N.C. 667, 84 S.E.2d 176 (1954)). The only allegation regarding the terms of the production contract is that Plaintiff must "personally provide management control and oversight of the pig production operation at YFL, and to personally assure performance under the Contract." Am. Compl. [DE-20, No. 5:16-CV-00031-F] at 5 ¶ 14. Plaintiff has failed to allege any contractual rights afforded to him against Goldsboro Hog Farms by the production contract, as required to establish his claim for interference with contract. Accordingly, it is recommended that Plaintiff's UDTP claim be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Where Defendant's motion to dismiss Plaintiff's UDTP claim is resolved pursuant to Rule 12(b)(6), the undersigned does not reach Defendant's alternative arguments in support of dismissal, and where the motion to dismiss is resolved on the parties' briefs, Plaintiff's request for a hearing is denied.

22

## V. CONCLUSION

For the reasons stated above, Plaintiff's motion to strike [DE-21, No. 5:16-CV-00031-F] is DENIED AS MOOT, Plaintiff's motion for evidentiary hearing and request for judicial notice [DE-31, No. 5:16-CV-00031-F] is DENIED, and it is recommended that Defendant's motion to dismiss [DE-21] be GRANTED.

IT IS DIRECTED that a copy of this Order and Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 3, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b). Any response to objections shall be filed by within **7 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and**

23

Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

So ordered and submitted, the 21st day of February 2017.

Robert B. Jones, Jr.
United States Magistrate Judge

24